IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KERI L. I.,[1]

        Plaintiff,

v.                  Case No. 2:22-cv-357

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Keri L. I. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits ("DIB") under the Social Security Act ("the Act"). Specifically, Plaintiff argues that the Commissioner's Administrative Law Judge ("ALJ") failed to include limits on pace in her residual function capacity ("RFC") despite finding moderate impairment in concentrating, persisting, or maintaining pace ("CPP") and provided no explanation for this exclusion. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure. This Report concludes that the ALJ based his

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

moderate rating on limitations in concentrating and persisting, not pace, and that the ALJ sufficiently explained the basis for Plaintiff's RFC. This Report therefore recommends that the court deny Plaintiff's motion for summary judgment, grant the Commissioner's cross-motion for summary judgment, and affirm the final decision of the Commissioner.

## I.  PROCEDURAL BACKGROUND

Plaintiff applied for DIB under Title II of the Act on February 3, 2020. (R. 52). She alleged disability beginning September 26, 2019,[2] based on anxiety, depression, attention deficit hyperactivity disorder ("ADHD"), obsessive-compulsive disorder, personality disorder, and Hashimoto's Disease.[3] (R. 52-53). The state agency denied her application initially and on reconsideration. (R. 63, 87). Plaintiff then requested an administrative hearing, which was held remotely on December 15, 2021. (R. 29, 31, 99). Plaintiff and her counsel attended the hearing, and an impartial vocational expert ("VE") testified. (R. 29). On January 25, 2022, the ALJ denied Plaintiff's claim for DIB, finding that she was not disabled during the period

---

[2] At the administrative hearing on December 15, 2021, Plaintiff asked the ALJ to amend the alleged onset date to February 20, 2021. (R. 21, 292).

[3] Hashimoto's Disease is "a progressive type of autoimmune thyroiditis with lymphocytic infiltration of the gland and circulating antithyroid antibodies; patients have goiter and gradually develop hypothyroidism." Saunders, Dorland's Illustrated Medical Dictionary 542 (31st ed. 2007).

alleged.   (R. 12-24).   The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (R. 18-20).   The ALJ also found that Plaintiff's RFC permitted her to perform work within the national economy.   (R. 23-24).   On July 25, 2022, the Appeals Council denied Plaintiff's request for review. (R. 1-3).

On August 25, 2022, Plaintiff filed her complaint in this court.   Compl. (ECF No. 1).   She seeks judicial review of the Commissioner's final decision that she was not disabled, claiming that the decision "is not supported by substantial evidence under the standards set forth by . . . applicable laws and regulations. . . ."   Id. ¶ 6 (ECF No. 1, at 2).

On November 30, Plaintiff moved for summary judgment.   (ECF No. 13).   Plaintiff argues that the case should be reversed or remanded because "the ALJ found 'moderate' impairment in CPP, but included no limits on pace in the RFC."   Pl.'s Br. Supp. Mot. Summ. J. ("Pl.'s Br.") (ECF No. 14, at 6).   Plaintiff contends that the ALJ did not provide an explanation for this exclusion.   Id.

On December 30, the Commissioner opposed Plaintiff's motion and filed a cross-motion for summary judgment.   (ECF No. 15). The Commissioner argues that the ALJ's moderate rating "in the

broad functional area of 'concentrating, persisting, or maintaining pace' . . . <u>does not</u> mean that the ALJ found Plaintiff to have a moderate rating in each of the three components of that broad functional area." Mem. Supp. Def.'s Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Opp'n") (ECF No. 16, at 13). The Commissioner adds that "[t]he ALJ fully explained his finding." <u>Id.</u> at 19. After a review of the record, this Report considers each of these arguments.

## II.  <u>FACTUAL BACKGROUND</u>

Plaintiff was born on September 1, 1981, and at the time of the ALJ's decision, she was 40 years old. (R. 52); <u>see</u> (R. 24). She met the insured status requirements under the Act until September 30, 2021. (R. 17). She has not engaged in substantial gainful activity since February 10, 2021, the alleged onset date. <u>Id.</u> She has a high school education and reported past work as an assistant manager, cook, and sales associate.[4] (R. 23, 48, 49).

Plaintiff's arguments in this court do not require a complete review of her medical history or the hearing, as she disputes only the ALJ's construction of the RFC with respect to the moderate CPP limits recited in the Step 3 finding.

---

[4] The ALJ decided not to consider Plaintiff's experience as a sales associate, as it was remote and outside of the period for his consideration.

Accordingly, the discussion below recites the medical findings of record which are relevant to that analysis.

In Plaintiff's first psychiatric appointment since her alleged onset date, psychiatric nurse practitioner Karen Beatty, MSN, noted that Plaintiff's behavior during the session was attentive and that she displayed no signs of hyperactivity or attention difficulties. (R. 539). In a subsequent appointment, NP Beatty found Plaintiff similarly attentive, but noted that Plaintiff is easily distracted and evidently has a short attention span. (R. 543). Nonetheless, in a third appointment, NP Beatty found Plaintiff more attentive and less disorganized. (R. 546). In a fourth appointment, NP Beatty found that Plaintiff's attention span was longer, she followed directions better, she was more likely to finish tasks, she was less disorganized, and she seemed less distractible. (R. 550). Nonetheless, in subsequent appointments, NP Beatty continued to note a short attention span. (R. 551, 555, 560).

Dr. Karen Armstrong, Ph.D., performed a psychological evaluation on Plaintiff for her disability claim. (R. 424-26). Plaintiff informed Dr. Armstrong that she was building a shed and working towards an IT certification. (R. 424). Plaintiff also informed Dr. Armstrong that a new psychiatrist had changed her medication, improving her focus. (R. 425). Dr. Armstrong noted that Plaintiff had functional attention and concentration.

(R. 426). Dr. Armstrong opined that Plaintiff's ADHD, mood fluctuations, and poor sleep could affect her consistency of job performance, even though Plaintiff did not report specific limitations to consistently attending a workplace. <u>Id.</u> Dr. Armstrong further noted that Plaintiff demonstrated below average ability to deal with the stresses typical of competitive work. <u>Id.</u>

Dr. Howard Leizer, Ph.D., an agency consultant, determined that Plaintiff had (in addition to other limitations that are not relevant to this dispute) a moderate limitation in CPP. (R. 56). Dr. Leizer specifically found that Plaintiff was not significantly limited in her ability to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine, work with others without distraction, make simple work-related decisions, complete a normal workday and workweek without interruptions, or perform at a consistent pace without an unreasonable number and length of rest periods. (R. 58-59). Nonetheless, Dr. Leizer found her moderately limited in the ability to carry out detailed instructions and maintain attention and concentration for extended periods. (R. 58). Dr. Leizer ultimately determined that Plaintiff's limitations were not disabling. (R. 61).

Dr. Stephen Saxby, Ph.D., similarly found that Plaintiff was moderately limited in CPP. (R. 76). He nonetheless found her capable of performing simple, routine tasks. Id. Dr. Saxby largely concurred with Dr. Leizer, except he found Plaintiff moderately limited in her ability to work with others without distraction, complete a normal workday or workweek without interruptions, or perform at a consistent pace without an unreasonable number and length of rest periods. (R. 79-80). Dr. Saxby ultimately found that Plaintiff was not disabled. (R. 85).

At the ALJ's hearing on December 15, 2021, the ALJ heard testimony from Plaintiff and then examined the VE. (R. 29-51). Plaintiff testified that she reduced her hours as a cook due to new management, but quit entirely on July 17, 2020, due to fear of the coronavirus and disagreements with her boss. (R. 37-38). Plaintiff cited her "depression, . . . anxiety, and lack of keeping composure in front of the world" as the reasons she could not work. (R. 40). Plaintiff went on to describe the variability of her mood, her difficulty getting along with coworkers at her job as a cook, her lack of friends, the shed she built for her landlord, her medications, and her psychotherapy. (R. 40-46). Plaintiff also testified that she could not return to any kind of full-time work because she found it "too stressful." (R. 47).

The ALJ then proposed an RFC to the VE that included, among other things, a limitation to routine, repetitive tasks. (R. 49). Given this RFC, the VE then testified that Plaintiff could not perform any of her past relevant work. Id. Nonetheless, VE testified that given Plaintiff's limitations, she could work in the following occupations: janitor (DOT 381.687-018) with 900,000 jobs nationally, dishwasher (DOT 3.18.687-010) with 275,000 jobs nationally, and warehouse worker (DOT 921.687-058) with 345,000 jobs nationally. (R. 49-50). In response to a follow-up question from Plaintiff's counsel, the VE testified that an individual with that RFC who "would be off task an average of 15% or more of the workday and/or would be absent from work an average of two or more days per month" would be precluded from any "full-time competitive employment." (R. 50).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).   It  consists  of  "more  than  a  mere  scintilla"  of evidence,  but  the  evidence  may  be  somewhat  less  than  a preponderance.   Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The  court  does  not  undertake  to  re-weigh  conflicting evidence,  make  credibility  determinations,  or  substitute  its judgment for that of the Commissioner.   Craig v. Chater, 76 F.3d 585,  589  (4th  Cir.  1996);  Hays,  907  F.2d  at  1456.   "Where conflicting  evidence  allows  reasonable  minds  to  differ  as  to whether  a  claimant  is  disabled,  the  responsibility  for  that decision  falls  on  the  [Commissioner]  (or  the  [Commissioner's] designate,  the  ALJ)."   Craig,  76  F.3d  at  589.   The Commissioner's  findings  as  to  any  fact,  if  supported  by substantial  evidence,  are  conclusive  and  must  be  affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017).   Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law.   Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.  ANALYSIS

Plaintiff argues that because the ALJ "found 'moderate' impairment in CPP, but included no limits on pace in the RFC"

and did not explain why, this court should remand.  Pl.'s Br.
(ECF No. 14, at 6).  The Commissioner argues that the ALJ's
finding of a moderate limitation in CPP "does not mean that the
ALJ found Plaintiff to have a moderate rating in each of the
three components of that broad functional area" and that the ALJ
adequately explained the basis for the RFC.  Def.'s Opp'n (ECF
No. 16, at 13, 16).  As explained below, this Report finds that
the ALJ did not find a moderate limitation specifically in pace
and that the ALJ adequately explained the basis for the RFC
limits imposed.  Accordingly, this Report concludes that remand
is not warranted, and therefore recommends that the court affirm
the Commissioner's decision.

## A.    Framework for SSA Disability Evaluation

To file for and receive disability benefits under the
Social Security Act, a claimant must (1) meet the insured status
requirements of 42 U.S.C. § 423(c)(1), (2) be under the
retirement age as defined in § 416 of the Act, and (3) possess a
disability as defined in § 423(d).  As relevant here, the Act
defines "disability" as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to
last for a continuous period of not less than twelve months." 42
U.S.C. § 423(d)(1)(A); accord 20 C.F.R. § 404.1505(a).  An

impairment renders an individual disabled if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in significant numbers in the national economy. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

To determine disability, the SSA provides ALJs with a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). The analysis is as follows:

1.   Is the claimant engaged in a substantial gainful activity?

2.   Does the claimant have a medically determinable impairment or combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to perform basic work activities?

3.   Does the claimant's impairment or combination of impairments meet or equal one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 and meet the durational requirements?

4.   Does the claimant's impairment or combination of impairments prevent him or her from performing any past relevant work ("PRW")?

5.   Does the claimant's impairment or combination of impairments prevent him or her from performing any other substantial gainful work ("SGA")?

After the third question, the ALJ assesses the claimant's RFC, which the ALJ uses to answer questions four and five. Id. § 404.1520(e). If the answer to question one is yes, or the answer to questions two, four, or five is no, then the claimant is not disabled. If the answer to questions three or five is

yes, then the claimant has established disability. A finding of disability or no disability at any question ends the analysis. The claimant bears the burden of proof for questions one through four, whereas the Commissioner bears the burden of proof for question five. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3); 404.1520b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)). Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ. Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.   The ALJ Decision Currently Before the Court for Review**

At step one, the ALJ found that Plaintiff had not engaged in SGA from her amended alleged disability onset date of February 10, 2021, through the ALJ's decision of January 25, 2022.  (R. 17).

12

At step two, the ALJ found that Plaintiff suffered from the following severe impairments which significantly limit her ability to perform basic work activities: general anxiety disorder, major depressive disorder, attention deficit hyperactive disorder, personality disorder, and bipolar disorder.  Id.

At step three, the ALJ found that the severity of Plaintiff's impairments, individually or combined, did not meet or medically equal the severity of one of the listed impairments.  (R. 18).

The ALJ then found that Plaintiff had moderate limitations in (1) understanding, remembering, or applying information; (2) interacting with others; concentrating, persisting, or maintaining pace (CPP); and adapting or managing oneself.  (R. 18-19).  The ALJ used these findings to apply the following restrictions in Plaintiff's RFC: (1) simple task work; (2) work with limited, superficial interaction with others; (3) routine, repetitive tasks; and (4) work with limited changes.  Id.

At step four, the ALJ used the RFC to determine that Plaintiff could not perform PRW.  (R. 22-23).

At step five, the ALJ used the RFC to find that Plaintiff could perform work in the national economy.  (R. 23-24).  Thus, the ALJ determined that Plaintiff was not disabled.  (R. 24).

**C.   The ALJ Provided an Adequate RFC and Explanation**

Plaintiff argues that the ALJ erred in crafting the RFC. Pl.'s Br. (ECF No. 14, at 6). Specifically, Plaintiff contends that the ALJ concluded that she had a moderate impairment in concentrating, persisting, and maintaining pace, but failed to include a limit on pace in the RFC.   Id.   The RFC limitation to routine, repetitive tasks, Plaintiff contends, only compensated for impairments in concentrating and persisting, and was not an adequate compensation for an impairment in pace.   See id. Plaintiff adds that the ALJ provided no explanation for why he did not include limits on pace.   Id.

In response, the Commissioner argues the ALJ's finding of moderate impairment in CPP does not mean that he found a moderate impairment in concentrating, persisting, and maintaining pace as individual components.   Def.'s Opp'n (ECF No. 16, at 13).   Instead, the Commissioner contends, Plaintiff only "had difficulties related to her ability to concentrate on tasks and to persist at task performance, not to her ability to perform those tasks at a particular pace."   Id. at 16.   The Commissioner adds that the ALJ "fully explained his finding." Id. at 19.   For the reasons explained below, I agree with the Commissioner.

The ALJ found a moderate limitation in CPP solely due to Plaintiff's history of ADHD.   (R. 19).   Evaluations and

Plaintiff's own reports indicated that she had "functional attention and concentration." Id. The ALJ noted that despite Plaintiff demonstrating some issues in concentration and focus, those issues had improved due to treatment for ADHD, and Plaintiff proved as much by building a shed and studying for an IT degree. (R. 21). Nonetheless, the ALJ concluded that Plaintiff's history of ADHD could lead to ongoing problems with "concentration and consistency." (R. 19, 21). This explanation was sufficient to establish a moderate limitation in CPP. The ALJ then explained that he provided limitations to routine, repetitive tasks in the RFC to accommodate the specific aforementioned problems. Id.

The ALJ's finding of moderate limitations in CPP does not mean that he found Plaintiff was moderately limited in concentrating, persisting, and maintaining pace. The ALJ's finding merely means that Plaintiff was moderately limited in at least one of these components: concentrating, persisting, or maintaining pace. See Lockett v. Saul, 834 F. App'x 236, 239 (7th Cir. 2020) ("A moderate rating in maintaining concentration, persistence, and pace means the claimant is so limited in at least one of those areas, not necessarily all three."); 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(F)(3)(f) ("We will document the rating of limitation of the whole area of mental functioning, not each individual part. . . . [f]or example . . .

if you have marked limitation in maintaining pace, and mild or moderate limitations in concentrating and persisting, we will find that you have marked limitation in the whole paragraph B3 area of mental functioning.") Here, the ALJ's discussion makes clear that the moderate limitation was based on limitation in concentrating and persisting ("concentration and consistency"), not pace. (R. 19).

However, even if Plaintiff correctly contends that the ALJ did not provide adequate limitations in the RFC for CPP, the Fourth Circuit has "not impose[d] a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). The ALJ need only "explain why a claimant's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in the claimant's RFC." Id. (cleaned up). Here, the ALJ discussed the basis for the RFC in detail. The ALJ explained that Plaintiff had issues in concentration and focus and that these issues stemmed from her ADHD. (R. 21). The ALJ noted, however, that Plaintiff had shown significant improvement in these issues due to treatment for her ADHD, as evident through the consultative evaluation. Id. Nonetheless, to address any potential lingering issues in concentration and focus due to Plaintiff's history of ADHD, the

ALJ provided for a limitation to routine repetitive tasks and other significant mental capacity restrictions in the RFC. Id. This explanation sufficiently details the basis for the ALJ's decision, enabling judicial review.

Plaintiff cites a significant number of cases where the court found for other plaintiffs against the Commissioner. See Pl.'s Br. (ECF No. 14, at 5-8); Pl.'s Reply Br. (ECF No. 17, at 1-3). Without addressing them all, this Report concludes that they are distinguishable. While some recent cases in this court have led to voluntary remands, Pl.'s Reply Br. (ECF No. 17, at 1), that is the Commissioner's prerogative and will not affect an analysis of this case. The inquiry, after all, is case-by-case. Shinaberry, 952 F.3d at 121. The court in Mascio v. Colvin granted remand "because the ALJ [t]here gave no explanation" for ignoring the plaintiff's moderate limitation in CPP. 780 F.3d 632, 633, 638 (4th Cir. 2015). This court likewise found that the ALJ's explanation was inadequate in Courtney L. v. Saul because the ALJ recognized ongoing issues in CPP (including pace) but instead based his conclusions on a few positive observations pulled from examinations. No. 2:20-cv-174, 2021 WL 2046712, at *10 (E.D. Va. May 5, 2021). Here, the ALJ did not find Plaintiff specifically limited in pace, nor did he ignore any ongoing issues in CPP. See (R. 19-21). Instead, he specifically accounted for the potential of ongoing issues

even despite finding her ADHD (the cause of her CPP limitations) vastly improved, and he tailored the RFC to those potential issues. (R. 21). His explanation of the reasons why those limitations were imposed is sufficient to permit judicial review. See Owens v. Kijakazi, No. 22-1273, 2023 WL 2344224, at *3 (4th Cir. Mar. 3, 2023).

## V.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 13), GRANT the Commissioner's Motion for Summary Judgment, (ECF No. 15), and AFFIRM the final decision of the Commissioner.

## VI.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ.

P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.  A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
June 15, 2023